# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 09-298 |
| LARRY BASS, JR. | : | |

**MEMORANDUM**

**Baylson, J.**                                                                                                        **June 28, 2010**

On April 30, 2009, a federal grand jury returned a seven-count indictment, charging Defendant Larry Bass with the following offenses: attempted distribution of marijuana, in violation of 21 U.S.C. § 846 (Count One); attempted distribution of Alprazolam, in violation of 21 U.S.C. § 846 (Count Two); possession with intent to distribute marijuana for remuneration, in violation of 21 U.S.C. § 841(a)(1) (Count Three); possession with intent to distribute marijuana for remuneration in or near a school, in violation of 21 U.S.C. § 860 (Count Four); possession with intent to distribute Alprazolam, in violation of 21 U.S.C. § 841(a)(1) (Count Five); possession with intent to distribute Alprazolam in or near a school, in violation of 21 U.S.C. § 860 (Count Six); and, possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) (Count Seven). Counts Four and Six were dismissed before trial.

On February 25, 2010, after a three-day jury trial, Bass was found guilty as to Counts One, Two, Three, Five, and Seven. On March 2, 2010, Bass filed a Motion for Judgment of Acquittal and Conditional Ruling on a Motion for New Trial as to Count Seven. (Doc. 73). For the reasons discussed below, Bass's Motion will be denied.

**I.      Factual and Procedural Background**

On April 1, 2009, an F.B.I. cooperating witness and informant ("CW") told federal agents that "Larry" (subsequently identified as Bass) was a drug dealer from whom CW had purchased Alprazolam and marijuana and who carried a firearm when conducting drug sales. (Tr. 02/22/10 at 7; Tr. 02/23/10 at 26-30, 33-34). Specifically, CW informed agents that on March 27, 2009 he was inside Bass's home and saw Bass wearing a holster and the bulge of a handgun beneath his clothing while Bass sold marijuana to him. (Tr. 02/23/10 at 36-40). CW took federal agents to Bass's home. (Tr. 02/22/10 at 6; Tr. 02/23/10 at 41-42).

On that same day, Bass received a phone call from CW, who was acting under the direction of Philadelphia police officers and F.B.I. agents and had consented to the taping of this and two subsequent calls between he and Bass. During the calls, CW indicated that he was interested in purchasing marijuana and Xanax pills from Bass and requested that Bass meet CW outside Bass's residence, located at 5627 Arlington Street, Philadelphia, Pennsylvania. (Tr. 02/22/10 at 7; Tr. 02/23/10 at 42-49, 51-58). Just after 4:30 P.M. on April 1, 2009, Bass left his home to meet CW and was arrested by F.B.I. and Philadelphia Police officials before reaching the car in which CW and CW's Police handlers were waiting. (Tr. 02/22/10 at 38-40). Bass was searched and found in possession of 12.5 grams of marijuana and six Alprazolam[1] tablets. (Tr. 02/22/10 at 92).

Following Bass's arrest and the search of his person, Bass's house was searched. (Tr. 02/22/10 at 41-42, 89). During the search, officers and agents confiscated: 907 grams of marijuana divided into various small clear packets and larger bags; four Alprazolam tablets in a

---

[1] Alprazolam is a generic form of Xanax.

bottle marked with Bass's prescription information; a digital scale; drug packaging material; and seven loaded automatic and semiautomatic firearms, including three firearms with ammunition in the chamber. (Tr. 02/22/10 at 43-62). One firearm was equipped with a viewing scope and another was equipped with a laser.[2] (Tr. 02/22/10 at 49, 58-59). All firearms were found in the same room as the drugs; one firearm was found in a holster and was next to and touching a package of marijuana. (Tr. 02/22/10 at 43-50, 53, 57). The firearms were found to be legally purchased and registered. (Tr. 02/22/10 at 15-16).

At trial, the Government offered the testimony of Philadelphia Police Detective Andrew Callaghan, a narcotics officer with 21 years of experience as a police officer and 18 years as a narcotics officer, who testified that the manner in which the marijuana in Bass's residence was packaged, the weight of this marijuana, the large quantity of unused packaging material, the presence of a scale, and the presence of loaded firearms were consistent with possession of narcotics for the purpose of distribution. (Tr. 02/23/10 at 99-103). Officer Callaghan noted that firearms are often used by drug dealers to protect their supply of narcotics, since a theft of the illegal substances could not be reported to the police. (Tr. 02/23/10 at 103).

On February 25, 2010, Bass was convicted of various drug trafficking charges, as well as possession of a firearm in furtherance of a drug trafficking crime. On March 2, 2010, Bass filed the instant Motion, and on March 17, 2010, filed a brief in support. (Doc. 83). The Government

---

[2] At trial, Bass argued that he is legally blind, in an attempt to mitigate claims by the Government that the scope and laser on the firearms indicate that the firearms were designed for violence. Bass argued that it is not unusual for individuals with vision problems to utilize such devices to improve accuracy at a gun firing range. (Tr. 02/22/10 at 46, 59-60).

filed its response to Bass's Motion on April 1, 2010, (Doc. 87), to which Bass replied on April 9, 2010. (Doc. 89).

## II.     The Parties' Contentions

Bass contends that there is insufficient evidence to support his conviction for possessing a firearm in furtherance of a drug trafficking crime. Specifically, Bass argues that he was not in possession of a firearm while attempting to sell drugs on April 1, 2009, and that the guns found inside his residence were legally purchased and legally possessed. The Government opposes this Motion, arguing that, although Bass was not carrying a weapon at the time of his arrest and although the firearms found in his residence were purchased and possessed legally, the weight of the evidence demonstrates that the firearms were possessed in furtherance of a drug trafficking crime.

## III.     Standard of Review

"In reviewing a Fed. R. Crim. P. 29 post-verdict motion for judgment of acquittal, a district court must 'review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence.'" United States v. Smith, 294 F.3d 473, 476 (3d Cir. 2002) (quoting United States v. Wolfe, 245 F.3d 257, 262 (3d Cir. 2001)); see also United States v. Bobb, 471 F.3d 491, 494 (3d Cir. 2009). "A finding of insufficiency should be 'confined to cases where the prosecution's failure is clear.'" United States v. Brodie, 403 F.3d 123, 133 (3d Cir. 2005) (quoting Smith, 294 F.3d at 477). A district court may not "usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting its judgment for that of the jury." Id. (citing United States v. Jannotti, 673 F.2d 578, 581 (3d Cir. 1982) (en

4

banc)). "Accordingly, the jury verdict must be upheld, unless, viewing the evidence in this manner, no rational jury 'could have found the essential elements of the crime beyond a reasonable doubt.'" United States v. Malik, No. 08-614, 2009 WL 4641706, at *2 (E.D. Pa. Dec. 7, 2009) (Surrick, J.) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).

## IV. Discussion

18 U.S.C. § 924(c) provides that

> any person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime . . . be sentenced to a term of imprisonment of not less than 5 years.

Id. § 924(c)(1)(A)(i).

Bass was convicted of possession of a firearm "in furtherance of" a drug trafficking crime. The Third Circuit addressed § 924(c)'s possession prong in United States v. Sparrow, 371 F.3d 851 (3d Cir. 2004), noting that, "[u]nder § 924(c), the 'mere presence' of a gun is not enough." Id. at 853. Instead, "the evidence must demonstrate that possession of the firearm advanced or helped forward a drug trafficking crime." Id. The court adopted eight factors enumerated by the Fifth Circuit in United States v. Ceballos-Torres, 218 F.3d 409 (5th Cir. 2000), that are relevant in determining whether a firearm advanced or helped forward a drug trafficking crime:

> the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found.

Sparrow, 371 F.3d at 853 (citing Ceballos-Torres, 218 F.3d at 414–15).

5

The Third Circuit has emphasized that these eight factors are "nonexclusive," and are not "legal requirement[s] for a § 924(c) conviction." Sparrow, 371 F.3d at 853. Thus, no one factor is required, and a finding of guilt may be made despite the absence of one or more factors. See, e.g., United States v. Bobb, 471 F.3d 491, 496–97 (3d Cir. 2006) (finding that, when "many" of the Sparrow factors were fulfilled, there existed a "nexus between the possession of the gun and the drug trafficking" and "a rational trier of fact could reasonably find that Mr. Bobb's possession of the firearm furthered, advanced or facilitated his drug trafficking activities").

For instance, in Sparrow, the Third Circuit reviewed a § 2255 motion to vacate a conviction for possession of a firearm in furtherance of drug trafficking. The petitioner, Sparrow, claimed his counsel was ineffective in permitting him to plead guilty to a § 924(c) violation. Sparrow, 371 F.3d at 851. Sparrow argued that an "insufficient factual nexus exist[ed]" between his drug trafficking crimes and possession of a loaded pistol when, following complaints from citizens regarding Sparrow's marijuana sales operation at a convenience store determined to be under the control of Sparrow, police executed a search warrant at the store and discovered nine large Ziploc bags containing marijuana, $140 in cash, and a loaded firearm. Id. at 851–52. These items were found in a compartment beneath floor tiles. Id. at 851. In order to gain access to the compartment, police used a crowbar to pry the tiles loose. Id. at 852.

The court utilized a sufficiency-of-the-evidence standard of review in evaluating whether Sparrow's possession of a firearm was in furtherance of his drug trafficking activities, exercising plenary review in interpreting the legal requirements of § 924(c). Id. Applying the eight factors outlined in Ceballos-Torres, the court concluded that there was sufficient evidence to support the

6

conviction. Id. at 854. Namely, the court found that the firearm was not legally possessed, was found with drugs and money, and was loaded. Id.

Sparrow argued that, because police could only access the firearm with the use of a crowbar, it was not easily accessible and therefore was not possessed in furtherance of drug trafficking. Id. at 853. The court noted that, "[w]hile the location of a firearm is admittedly relevant, immediate accessibility at the time of search or arrest is not a legal requirement for a § 924(c) conviction." Id. Moreover, the court found that the accessibility factor may be fulfilled by a strategically located firearm, and that, in Sparrow's case, "[t]he gun was placed so that it would be immediately available for Sparrow's protection whenever he retrieved drugs or money from the floor compartment." Id. at 854. Thus, the court concluded, this factor was satisfied as well. Id.

Similarly, in United States v. Iglesias, 535 F.3d 150 (3d Cir. 2008), the Third Circuit affirmed the defendant's conviction, following a jury trial, for a violation of § 924(c). During the execution of a warrant to search an apartment under the control of the defendant, police discovered, inter alia, a briefcase which contained an unloaded semiautomatic handgun, a loaded magazine, and drug packaging materials, and which was itself located within close proximity to drugs. Id. at 154. The apartment also contained over $15,000 in cash, approximately 156 grams of methamphetamine, and drug packaging materials. Id.

Applying the Sparrow factors, the court determined that there was sufficient evidence to support the defendant's conviction. Id. at 157. Specifically, the court found that, "[g]iven the proximity of the loaded magazine to the gun—and considering that the gun, magazine, and drug packaging paraphernalia all were stored together in the briefcase that was found in the same

room as methamphetamine—a rational juror easily could have concluded that the gun was used 'in furtherance of' [the defendant's] drug-trafficking activities within the meaning of 18 U.S.C. § 924(c)." Id. (citing United States v. Loney, 219 F.3d 281, 289 (3d Cir. 2000)).

In the present case, the government argues that many of the Sparrow factors are satisfied. The Court agrees. First, Bass was convicted of the drug trafficking offenses charged in Counts One, Two, Three, and Five, and is not contesting these convictions. Second, Bass's firearm, though not found on his person, was strategically located so as to be easily accessible when Bass retrieved his drug supply. Third, the firearms possessed by Bass were automatic or semi-automatic weapons and were not possessed as collector's items or for the purposes of hunting. See, e.g., United States v. Arzola, 361 F. App'x 309, 312–13 (3d Cir. 2009) (nonprecedential) (noting that the firearm in question was "a semi-automatic handgun, not an antique musket nor a hunting rifle"). Fourth, the firearms were loaded and several contained bullets within their chambers. Fifth, the firearms were found in close proximity to drugs, drug paraphernalia, and money that the jury could have concluded was the profit from Bass's drug trafficking operation; at least one of the firearms was touching a package of marijuana. Sixth, the firearms were found during the search of Bass's residence following his arrest for the attempted sale of marijuana and Alprazolam.

Bass argues that, because no firearms were found on his person during the attempted sale of marijuana and Aprazolam, he did not violate § 924(c) and therefore the evidence is insufficient to support his conviction. Bass points to Bailey v. United States, 516 U.S. 137 (1995), in support of his claim. Bailey requires that a defendant actively employ a firearm during a drug trafficking crime in order to sustain a conviction, 516 U.S. at 143, and the evidence does

8

not demonstrate that Bass actively employed any firearm during the attempted distribution of marijuana and Aprazolam. Bass's reliance on Bailey, however, is misplaced. Bailey addressed the use prong of § 924(c). Bass might be correct in asserting that a § 924(c) conviction for using or carrying a firearm during and in relation to drug trafficking would be inappropriate if based solely on Bass's arrest and convictions for attempted distribution of marijuana and Alprazolam. Bass, however, was convicted under the possession prong of § 924(c), which was introduced in 1997—after, and in response to, Bailey. See Ceballos-Torres, 218 F.3d at 413. Accordingly, Bailey does not control the Court's analysis here. See, e.g., United States v. Morgan, 33 F. App'x 603, 606 (3d Cir. 2002) (nonprecedential) (rejecting, in light of the 1997 amendment to the statute, the defendant's argument under Bailey that, because the defendant did not use or carry a firearm, he may not be convicted of a violation of § 924(c)).

Bass further argues that the presence of marijuana in proximity to a firearm does not justify, on its own, a conviction under § 924(c). This, however, is unsupported by Sparrow and its progeny, which make clear that the strategic location of a firearm, as well as the proximity of a firearm to drugs, are both relevant considerations in support of a conviction under the statute's possession prong. See Sparrow, 371 F.3d at 853; see also, e.g., Iglesias, 535 F.3d at 157 (suggesting that proximity of a firearm and ammunition to drugs and drug paraphernalia may, in itself, support a finding that a firearm was possessed in furtherance of a drug trafficking crime); Arzola, 361 F. App'x at 313 (finding that the close proximity of semiautomatic firearms to drugs and drug proceeds was relevant in assessing the sufficiency of the evidence underlying a § 924(c) conviction).

Finally, Bass argues that he was legally in possession of the firearms found at his residence and, therefore, the evidence is insufficient to support a § 924(c) conviction. The government does not contest that Bass legally purchased and owned each of the firearms located at his residence. However, the Government argues, and the Court agrees, that uncontradicted evidence that Bass's possession of the firearms was not itself illegal does not require granting his Motion for Acquittal. The court in <u>Sparrow</u> specifically emphasized that the eight factors are relevant considerations in the analysis of a § 924(c) conviction, not elements of the offense that each must be satisfied to sustain a conviction. <u>Sparrow</u>, 371 F.3d at 853; <u>see also, e.g.</u>, <u>Bobb</u>, 471 F.3d at 496–97 (affirming a conviction under § 924(c) when "many" of the <u>Sparrow</u> factors were satisfied); <u>Arzola</u>, 361 F. App'x at 313 (noting that no single factor is required under <u>Sparrow</u>).

Here, applying the <u>Sparrow</u> factors and reviewing the record in the light most favorable to the Government, the court finds that, based on the evidence, a rational jury could have found beyond a reasonable doubt that Bass possessed a firearm in furtherance of a drug trafficking crime. Therefore, Bass's Motion will be denied.

An appropriate order follows.